*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## MEMORANDUM OPINION

No. 04-10-00053-CV

James **MACIVOR** and Phoenix Air Transport, Inc.,
Appellants

v.

**ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCIATION**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 08-1872-CV
Honorable Gary L. Steel, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: June 9, 2010

REVERSED AND REMANDED

Appellants James MacIvor and Phoenix Air Transport, Inc., (hereinafter, "MacIvor"), seek reversal of the trial court's order refusing to compel arbitration. In opposing arbitration, appellee Zuehl Airport Flying Community Owners Association argued the parties' arbitration agreement was unenforceable because it was part of a mediated settlement agreement incorporated into an agreed final judgment. Because we conclude the trial court should have compelled arbitration, we reverse

the trial court's order, and remand the cause to the trial court to grant the motion to compel arbitration and order the parties to arbitration in accordance with their agreement.

## BACKGROUND

Since 2003, the Association, MacIvor, and other landowners who are not parties to the underlying suit, have had disputes about property uses, property boundaries, easements, and the construction of a fence at a subdivision located in Guadalupe County, Texas. These disputes have led to the filing of several lawsuits. This appeal involves two of these lawsuits.

On April 3, 2006, the trial court signed an agreed judgment in cause number 03-1901-CV filed in the 25th Judicial District Court, Guadalupe County, Texas. The Association, MacIvor, and Dorothy Golding[1] were parties to the agreed judgment, which incorporated by reference a mediated settlement agreement signed by the parties on March 3, 2006. The mediated settlement agreement provided in relevant part:

> 1. The Zuehl Airport Flying Community Owners' Association will be permitted to fence the boundary of the platted subdivision, and thereby excluding Lot One; and amend the Covenants, Conditions and Restrictions to exclude their effect on Lot One and exclude Lot One from any access to or use of subdivision roads/taxiways, runway or common area, and other benefits.
>
> ....
>
> 6. Scott Magers will arbitrate *any disputes as to the implementation of this agreement or its meaning.*

(emphasis added). The agreed judgment was also signed by the parties.

---

[1] Golding is not a party to the underlying suit or to this appeal.

On November 6, 2008, the Association filed the underlying suit in the 25th District Court, Guadalupe County, Texas. According to the allegations in its petition, the Association had constructed the fence authorized in the agreed judgment on several occasions only to have MacIvor and others tear down the fence each time. The Association asked the trial court to enforce the agreed judgment in cause number 03-1901-CV by issuing a permanent injunction prohibiting MacIvor from removing or tampering with the fence in the future.[2]

MacIvor answered the suit, asserting the Association's claim was subject to arbitration based on the arbitration clause in the mediated settlement agreement in cause number 03-1901-CV. MacIvor also asserted counterclaims for breach of the mediated settlement agreement, breach of the revised declarations, trespass, and tortious interference with property rights. Additionally, MacIvor requested injunctive relief to prevent the construction of another fence at the same site. Thereafter, MacIvor moved to compel arbitration.

The Association responded to the motion to compel arbitration, arguing the issues before the court, "namely the erection of the fence and [MacIvor's] purported easements are not subject to arbitration" because the Association "has a valid judgment and the remaining issues are barred by Res Judicata and Collateral Estoppel."

After a hearing, the trial court denied the motion to compel arbitration. On appeal, MacIvor argues the trial court erred in refusing to compel arbitration because (1) the pleadings show the parties' dispute falls within the scope of the parties' arbitration agreement, and (2) the Association failed to present or prove a defense to the enforcement of the arbitration agreement.

---

[2] The Association's suit named other defendants, but they are not parties to this appeal.

**APPLICABLE LAW**

A party may appeal from an interlocutory order denying a motion to compel arbitration under the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (Vernon 2005). When an appeal from an order denying a motion to compel arbitration turns on a legal determination, appellate courts apply a de novo standard of review. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 (Tex. 2008). A trial court's interpretation concerning the scope of a contract's arbitration clause is a question of law reviewed under a de novo standard. *Dell, Inc. v. Muniz*, 163 S.W.3d 177, 180 (Tex. App.—San Antonio 2005, orig. proceeding). Whether an arbitration agreement is enforceable is subject to de novo review. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). In a de novo review, the trial court's decision is given absolutely no deference. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex.1998).

A party seeking to compel arbitration must establish (1) an agreement by the parties to arbitrate and (2) that the claims in the lawsuit are within the scope of the arbitration agreement. *In re Medallion, Ltd.*, 70 S.W.3d 284, 287-88 (Tex. App.—San Antonio 2002, orig. proceeding). State and federal policies favor arbitration, and thus, the trial court must resolve any doubts about the arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank*, *N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). After a valid arbitration agreement is established, the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the

trial court has no discretion but to compel arbitration and stay its own proceedings." *FirstMerit*, 52 S.W.3d at 753-54.

A written agreement to arbitrate is valid and enforceable unless grounds exist for revocation of the agreement. TEX. CIV. PRAC. & REM. CODE ANN. § 171.001 (Vernon 2005). "A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract." *Id*. § 171.001(b); *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Grounds for revocation of an arbitration agreement include fraud, waiver, unconscionability, or that the dispute falls outside the scope of the agreement. *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.—San Antonio 2000, no pet.). The burden of proving a ground for revocation of an arbitration agreement—such as fraud, unconscionability, or voidness under public policy—falls on the party opposing the arbitration agreement. *Poly-America*, 262 S.W.3d at 348. Moreover, to preclude enforcement of an arbitration agreement, the defense presented must specifically relate to the arbitration agreement itself, rather than the contract as a whole. *FirstMerit*, 52 S.W.3d at 756. Defenses that pertain to the contract as a whole are subject to arbitration. *Id*.

Finally, an agreed judgment must be interpreted as if it were a contract between the parties and the interpretation is, accordingly, governed by the laws relating to contracts. *In the Interest of P.D.D.*, 256 S.W.3d 834, 844 (Tex. App.—Texarkana 2008, no pet.) (citing *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979)). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Id*. (citing *Garcia v. RC Cola 7-Up Bottling Co.*, 667 S.W.2d 517, 519-20 (Tex. 1984)).

## DISCUSSION

Here, it is undisputed that the arbitration clause in the mediated settlement agreement is governed by the Texas Arbitration Act. Additionally, there is no dispute about the arbitration agreement's existence. Both the mediated settlement agreement and the agreed judgment are signed by Association representatives and MacIvor. Phoenix, a company owned by MacIvor, was not in existence at the time the mediated settlement agreement was signed and did not sign the mediated settlement agreement; however, MacIvor has indicated Phoenix is willing to submit any issue affecting Phoenix to arbitration.[3]

Moreover, the claims presented in the underlying lawsuit are within the scope of the arbitration agreement in the mediated settlement agreement. To determine whether a claim falls within the scope of an arbitration a agreement, courts examine the terms of the agreement and the factual allegations in the petition. *Medallion*, 70 S.W.3d at 288. "Generally, if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable." *Id*. On the other hand, "if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Id*.

---

[3] Moreover, the record indicates the arbitrator named in the arbitration agreement, Scott Magers, is not available to arbitrate. Nevertheless, the motion to compel arbitration requests the appointment of a substitute arbitrator pursuant to Section 171.041(b)(3) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.041(b)(3) (Vernon 2005) (providing that the court, on application of a party, shall appoint one or more arbitrators if an appointed arbitrator fails or is unable to act and a successor has not been appointed).

A review of the parties' pleadings in the present case shows the facts alleged have a significant relationship with the contract that is subject to arbitration, *i.e.*, the mediated settlement agreement. In its pleadings, the Association seeks to enforce the actual terms of the mediated settlement agreement. The Association alleges it has repeatedly built the fence in accordance with the terms of the mediated settlement agreement, and MacIvor has repeatedly removed the fence. In his pleadings, MacIvor contends the fences constructed by the Association failed to comply with the terms of the mediated settlement agreement. Particularly, MacIvor alleges the mediated settlement agreement does not allow the placement of the fence in the taxiway, nor does it permit the fence to block access to land reserved for future development. Here, the facts alleged in the parties' pleadings directly involve the "implementation" and "meaning" of the mediated settlement agreement. We, therefore, hold the arbitration clause in the mediated settlement agreement encompasses the parties' claims. Because a valid arbitration agreement was established and the claims in the lawsuit are within the scope of the agreement, the burden shifted to the Association to raise a defense to enforcing arbitration.

The Association asserts it has met this burden. The Association argues the arbitration agreement is unenforceable because it is contained in a mediated settlement agreement that has been incorporated into an agreed final judgment. The Association further argues that enforcing the arbitration agreement would affect the sanctity of the agreed final judgment. Thus, the Association essentially asserts the arbitration clause is unenforceable because the judiciary's paramount responsibility is to secure its decrees and judgments so they are final and adjudicatory. For support,

the Association relies on *Barrientes v. Bd. of Trustees, Harlandale Indep. Sch. Dist.*, in which we stated:

> It must be noted at the outset that this suit is based on a settlement agreement that was subsequently incorporated into an agreed judgment. This type of judgment is to be construed in the nature of a contract, and therefore rules relating to contracts apply in its interpretation. Despite its contractual nature, however, it is more than a mere contract; it has the same degree of finality and binding force as one rendered by a court at the conclusion of adversary proceedings. Further, it has been held that one who has acquiesced in a consent judgment and accepted its benefits is precluded from questioning its validity, even if the judgment is defective or invalid.

764 S.W.2d 28, 29 (Tex. App.—San Antonio 1989, writ denied) (citations omitted).

Although *Barrientes* correctly stated the law concerning the finality and binding force of agreed final judgments, *Barrientes* did not involve an agreed judgment that contained an arbitration clause. *See id.* Thus, *Barrientes* does not stand for the proposition that an arbitration clause contained in an agreed final judgment is unenforceable. Here, the parties—as part of their agreed judgment—agreed that future disputes regarding the implementation and meaning of the mediated settlement agreement would be resolved by arbitration. The parties were free to make this agreement about the manner in which future disputes would be resolved. The fact that the parties' arbitration agreement was incorporated into an agreed judgment does not alter the court's obligation to enforce the arbitration agreement. Absent some cognizable defense, courts are obligated to enforce arbitration clauses incorporated into agreed judgments like any other contract. *See Provine v. Provine*, No. 01-09-00769-CV, 2009 WL 4967245, at *5 (Tex. App.—Houston [1st Dist.] Dec. 10, 2009, no pet.) (holding the trial court should have compelled arbitration of a motion to enforce property division when the parties' agreed divorce decree called for arbitration of the claim).

Alternatively, the Association argues the arbitration clause was unenforceable based on res judicata and collateral estoppel. Res judicata bars the relitigation of claims that have been finally adjudicated or arise out of the same subject matter and could have been litigated in the prior action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). For res judicata to apply, the following elements must be present (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Id*. Collateral estoppel precludes a party from relitigating an issue when (1) it was fully litigated in the first action, (2) it was essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Fitz v. Days Inns Worldwide, Inc.*,147 S.W.3d 467, 470 (Tex. App.—San Antonio 2004, no pet.). Both res judicata and collateral estoppel are affirmative defenses. TEX. R. CIV. P. 94; *id.*

MacIvor argues, and we agree, that res judicata and collateral estoppel do not render the arbitration agreement in this case unenforceable. In its response to the motion to compel arbitration, the Association argued that the issues of the fence itself, the location of the fence, and the character of the fence were all litigated in cause number 03-1901-CV, and therefore, MacIvor's latest attempt to adjudicate these issues was barred by res judicata and collateral estoppel. Thus, the defenses of res judicata and collateral estoppel relate to the merits of MacIvor's counterclaims, not to the arbitration agreement itself. Because res judicata and collateral estoppel are not grounds for revocation of the arbitration agreement, they have no bearing on the enforceability of the arbitration agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(b) (Vernon 2005) (providing a party

may revoke an arbitration agreement only on a ground that exists at law or in equity for the revocation of a contract).

Here, the parties clearly agreed to submit any disputes regarding the implementation and meaning of the mediated settlement agreement to arbitration. There is no indication the parties intended the arbitration clause to expire when the mediated settlement agreement became a judgment of the court. Moreover, the Association failed to assert a cognizable defense to the enforcement of the arbitration clause. Because the Association failed to establish a defense to the enforcement of the arbitration clause, the trial court should have granted the motion to compel arbitration and stayed its own proceedings.

## CONCLUSION

We, therefore, reverse the trial court's order denying the motion to compel arbitration, and remand to the trial court to grant the motion and order the parties to arbitration.

Karen Angelini, Justice